Kristen Lake Cardoso (SBN: 338762)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-332-4200
cardoso@kolawyers.com

John Nelson, Esq. (S.B. #317598)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
JNelson@milberg.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER LEWIS, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALATION, INC., and JANNEY MONTGOMERY SCOTT LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Jennifer Lewis ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendants Alation, Inc. ("Alation") and Janney Montgomery Scott LLC ("Janney"), collectively ("Defendants") on behalf of herself and all others similarly situated, and allege, upon information and belief, except as to her own actions, the investigation of counsel, and facts that are a matter of public record:

## INTRODUCTION

1. This case pursues monetary damages as well as injunctive and declaratory relief from Defendants, stemming from their negligence in safeguarding specific personally identifiable information ("PII" or "Private Information").

2. Alation is an enterprise data intelligence software company that

specializes in data catalog and data governance services.[1]

3. Janney is a nationwide wealth management and financial advising firm based in Philadelphia, Pennsylvania, that, on information and belief, contracted with Alation for data intelligence services.[2]

4. On about September 1, 2026, Alation notified Janney that on August 10, 2026, an unknown actor grained access to Alation's network systems, resulting in the unauthorized disclosure of the Private Information of Plaintiff and Class Members (the "Data Breach").[3] Such information encompasses, but is not limited to, names, physical addresses, Social Security numbers or tax identification numbers, and financial account numbers.[4]

5. Plaintiff and Class Members entrusted their sensitive personal information (directly or indirectly) to Defendants, with the mutual understanding that it would be protected against disclosure. However, due to the Data Breach, this information was targeted, compromised, and unlawfully accessed.

6. The Data Breach occurred because Defendants failed to implement reasonable security procedures and practices, failed to disclose material facts surrounding its deficient data security protocols, and failed to timely notify the victims of the Data Breach.

7. As a result of Defendants' failure to protect the sensitive information they were entrusted to safeguard, Plaintiff and Class Members did not receive the benefit of their bargain and now face a significant risk of identity theft and fraud, financial fraud, and other identity-related fraud now and into the indefinite future.

## **JURISDICTION AND VENUE**

8. The Court has subject-matter jurisdiction over this action under the Class

---

[1] https://www.alation.com/
[2] https://www.janney.com/
[3] https://www.mass.gov/doc/2026-1874-janney-montgomery-scott-llc/download
[4] *Id.*

Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class, including Plaintiff, are citizens of a state different from one of the Defendants.

9. The Court has general personal jurisdiction over Alation because its headquarters and principal place of business is located in California.

10. The Court has specific personal jurisdiction over Janney because it purposefully availed itself of California by providing its clients' Private Information to Alation in California, indicating a deliberate engagement with the markets here. Consequently, the exercise of jurisdiction by the Court is not only justified but also appropriate, given Janney's intentional involvement in California's economic activities

11. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) due to Alation's principal place of business in this District. Moreover, a significant portion of the events and omissions that form the basis of this action transpired within this District. Thus, it is appropriate that this Court serves as the venue for adjudicating this matter.

## PARTIES

12. Plaintiff is a resident and citizen of the state of Alabama.

13. Alation is a California corporation with its headquarters and principal place of business located at 3 Lagoon Dr., Suite 300, Redwood City, CA 94065.

14. Janney is a Delaware limited liability company with its headquarters and principal place of business located at 1717 Arch St., Philadelphia, PA 19103.

## FACTUAL ALLEGATIONS

### Defendants Knew the Risks of Storing Valuable Private Information and the Foreseeable Harm to Victims.

15. Alation is an enterprise data intelligence software company that specializes in data catalog and data governance services to, in the words of Alation,

"ensure your data apps and agents are accurate."[5]

16. Janney is a nationwide wealth management and financial advising firm based in Philadelphia, Pennsylvania, that, on information and belief, contracted with Alation for data intelligence services.[6]

17. On about September 1, 2026, Alation notified Janney an unknown actor grained access to Alation's network systems, resulting in the unauthorized disclosure of the Private Information of Plaintiff and Class Members, including, but not limited to, names, physical addresses, Social Security numbers or tax identification numbers, and financial account numbers.[7]

18. On information and belief, as part of its practice, Alation collects and stores the Private Information related to Janney's clients.

19. Plaintiff and Class Members, as clients of Janney, trusted these assurances and counted on this sophisticated business entity to maintain the confidentiality and security of their sensitive Private Information. They expected Janney to use this information solely for business purposes and to make only authorized disclosures. Patients, in general, insist on security measures to protect their Private Information, particularly when it involves sensitive details.

20. Despite recognizing its duty to do so, on information and belief, Janney has not implemented reasonable cybersecurity safeguards or policies to protect its clients Private Information or supervised its IT or data security agents and employees, including Alation, to prevent, detect, and stop breaches of its systems. As a result, Janney left significant vulnerabilities in its use and storage of Plaintiff and the Class's Private Information for cybercriminals to exploit and gain access to clients' Private Information.

<u>The Data Breach</u>

21. As a condition of receiving services from Janney, Janney requires its

---

[5] https://www.alation.com/
[6] https://www.janney.com/
[7] https://www.mass.gov/doc/2026-1874-janney-montgomery-scott-llc/download

clients to disclose Private Information including but not limited to, their names, physical addresses, Social Security numbers or tax identification numbers, and financial account numbers. Janney used that Private Information to facilitate its business and provision of services to Plaintiff, and required Plaintiff to provide that Private Information to obtain services.

22. On information and belief, Janney provided Alation with Plaintiff's Private Information as part of the services Alation provided to Janney. Thus, Alation was granted access and custody of Plaintiff's Private Information including but not limited to name, physical address, Social Security number, and financial account number.

23. Defendants collect and maintain sensitive Private Information in their computer systems.

24. In collecting and maintaining the Private Information, Defendants agreed to safeguard the data using reasonable means according to their internal policies and federal law.

25. Janney first became aware of the suspicious activity on September 1, 2026, when Alation notified it.[8] Following an internal investigation, Janney discovered that on August 10, 2026, a cyber-criminal viewed or took information belonging to Janney's clients via Alation's systems.

26. Defendants' data security policies and systems were inadequate and permitted a cyber-criminal to compromise the files of Janney clients. Janney failed to exercise sufficient due diligence in verifying and overseeing Alation's data security policies and systems. By entrusting Alation with clients' Private Information without proper oversight or ensuring robust safeguards, Janney directly contributed to the data breach.

27. In October 2026, Janney began sending individualized Notice Letters to impacted individuals (the "Notice").

---

[8] *Id.*

28. Despite the lack of transparency about the root cause of the incident, the Notice reveals key facts: a) the Data Breach was perpetrated by cybercriminals; b) these cybercriminals initially breached Alation's networks and systems, subsequently viewing or exfiltrating data; and c) within Alation's networks and systems, the cybercriminals specifically targeted information, potentially including Plaintiff's and Class Members' Private Information and other sensitive data for download and theft.

29. By waiting to disclose the Data Breach and by downplaying the risk that victims' Private Information would be misused by criminals, Defendants prevented victims from taking meaningful, proactive, and targeted mitigation measures to protect themselves from harm.

<u>Defendant Failed to Comply with FTC Guidelines</u>

30. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

31. In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[9] The guidelines note that businesses should protect the personal information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that

[9] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

32. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

33. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect Personal Information by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

34. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendants of failing to use reasonable measures to protect Private Information they collect and maintain from consumers. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

35. The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and

profit."[10]

36. As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

37. Defendants was at all times fully aware of its obligation to protect the Private Information it collected from Plaintiff and the Class, yet failed to comply with such obligations. Defendants was also aware of the significant repercussions that would result from its failure to do so.

<u>Defendant Failed to Comply with Industry Standards.</u>

38. As noted above, experts studying cybersecurity routinely identify businesses that collect Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

39. The Center for Internet Security's ("CIS") Critical Security Controls ("CSC") recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[11]

---

[10] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), available at: https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

[11] *See The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list.

40. The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

a. Control who logs on to your network and uses your computers and other devices.
b. Use security software to protect data.
c. Encrypt sensitive data, at rest and in transit.
d. Conduct regular backups of data.
e. Update security software regularly, automating those updates if possible.
f. Have formal policies for safely disposing of electronic files and old devices.
g. Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

41. Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including: (i) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (ii) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (iii) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other

steps.[12]

42. Defendants failed to implement industry standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls ("CIS CSC"), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

Defendant Breached Its Duty to Safeguard Plaintiff's and Class Members' Private Information.

43. In addition to its obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and the Class.

44. Defendants breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

---

[12] *Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations.

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

e. Failing to adhere to industry standards for cybersecurity as discussed above; and/or

f. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

45. Defendants negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information and exfiltrate such Private Information.

46. Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

47. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft.

<u>As a Result of the Data Breach, Plaintiff's and Class Members Are at a Significantly Increased Risk of Fraud and Identity Theft.</u>

48. The FTC hosted a workshop to discuss "informational injuries," which are injuries that Plaintiff and Class Members suffer from privacy and security incidents such

as data breaches or unauthorized disclosure of data.[13] Exposure of highly sensitive personal information that individuals to keep private may cause harm to them, such as the ability to obtain or keep employment. Individuals' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

49. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market (the "dark web") to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

50. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

51. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact

[13] *FTC Information Injury Workshop, BE and BCP Staff Perspective*, FEDERAL TRADE COMMISSION (Oct. 2018), available at: https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

52. Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

53. One such example of how malicious actors may compile Private Information is through the development of "Fullz" packages.

54. Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

55. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

56. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their

account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[14] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts. PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

57. The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[15] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants' industries.

58. Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker. Beyond things like spamming affected individuals, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual. It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[16]

---

[14] *See IdentityTheft.gov,* FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Steps.

[15] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. DEP'T OF JUSTICE (Feb. 10, 2020), https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military.

[16] *See Dark Web Price Index: The Cost of Email Data,* MAGICSPAM (Sept. 12, 2022), https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/.

59. Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails. If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

60. One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[17]

61. Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

62. A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user. In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

63. Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's PII impairs his ability to participate in the economic marketplace.

64. The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[18] After interviewing

[17] *See* John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 Rich. J. L. & Tech. 11, 14 (2009).

[18] *2023 Consumer Impact Report* (Aug. 2023), IDENTITY THEFT RESOURCE CENTER, available at: https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf.

over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;
- 29-percent experienced financial losses exceeding $10,000;
- 40-percent were unable to pay bills;
- 28-percent were turned down for credit or loans;
- 37-percent became indebted;
- 87-percent experienced feelings of anxiety;
- 67-percent experienced difficulty sleeping; and
- 51-percent suffered from panic of anxiety attacks.[19]

65. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[20]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

66. PII is a valuable commodity to identity thieves because once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

67. As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future and have no choice but to vigilantly monitor

[19] *Id.* at pp. 9, 21–25.

[20] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf.

their accounts and purchase credit monitoring and identity theft protection for many years to come.

Classwide Injuries and Damages

68. In sum, Plaintiff and Class Members are at an imminent, immediate, and continuing increased risk of experiencing devastating instances of identity theft, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, unauthorized charges made on their financial accounts, and other forms of identity theft.

69. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to continue to carry out such targeted schemes against Plaintiff and Class Members.

70. The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which has been and will continue to be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

71. Further, as a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach. Specifically, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

72. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

73. Additionally, Plaintiff and Class Members also suffered a loss of value of

their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists.

74. "The business of data brokering has existed for over a decade and, according to some sources, the industry currently generates annual revenue of $200 billion."[21]

75. In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $60 a year.[22]

76. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

77. Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

78. Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendants, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible

---

[21] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD (Apr. 5, 2023), https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/.

[22] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

online, that access to such data is password-protected, and that such data is properly encrypted.

79. As a direct and proximate result of Defendants' actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

**PLAINTIFF'S EXPERIENCES**

80. Plaintiff was a client of Janney. She received an email notifying her that she was impacted by the Data Breach.

81. As a condition of receiving services from Janney, she was required to provide her Private Information, directly or indirectly, to Defendants including among other things, her name, address, Social Security number, and account number.

82. At the time of the Data Breach, Defendants retained Plaintiff's Private Information in their systems.

83. Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff would not have entrusted her Private Information to Defendants had she known of Defendants' lax data security policies.

84. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach. Plaintiff has spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

85. Plaintiff has also experienced an increased number of spam and suspicious calls, emails and texts following the Data Breach and believes that these may be phishing attempts designed to gain access to additional personal information.

86. Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of

privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information.

87. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed him of key details about the Data Breach's occurrence.

88. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

89. As a result of the Data Breach, Plaintiff is at a present and continuing risk of identity theft for her lifetime. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

## **CLASS ALLEGATIONS**

90. Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5), Plaintiff propose the following Class definition, subject to amendment as appropriate:

> All citizens and residents of the United States whose Private Information was impacted in the Data Breach (the "Class").

91. Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their

immediate family.

92. Plaintiff reserve the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

93. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. Thousands of individuals were affected by the Data Breach.

94. Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, including the following:

a. Whether and to what extent Defendants had a duty to protect the Private Information of Plaintiff and Class Members;
b. Whether Defendants had respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;
c. Whether Defendants had respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;
d. Whether Defendants failed to adequately safeguard the Private Information of Plaintiff and Class Members;
e. Whether and when Defendants actually learned of the Data Breach;
f. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;
g. Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;
h. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the

information compromised in the Data Breach;

i. Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

95. Typicality: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, were exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Class.

96. Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

97. Adequacy: The Plaintiff will serve as a fair and effective representative for the Class Members, possessing no conflicting interests that would hinder the protection of their rights. The relief sought by the Plaintiff aligns with the collective interests of the Class, without any adverse implications for its members. The infringements upon the Plaintiff's rights and the damages incurred are emblematic of those experienced by other Class Members. Moreover, the Plaintiff have engaged legal counsel adept in navigating intricate class action and data breach litigation, demonstrating a commitment to

vigorously pursue this case.

98. Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

99. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

100. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

101. Adequate notice can be given to Class Members directly using information

maintained in Defendants' records.

102. Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the Private Information of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

103. Further, Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

## CAUSES OF ACTION

## COUNT I

### Negligence

### (On Behalf of Plaintiff and Class Members against Defendants)

104. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

105. Janney requires its clients, including the Plaintiff and Class Members, to submit confidential Private Information as part of the standard process for receiving services. As such, Janney owed Plaintiff and Class Members a non-delegable duty to protect the Private Information it collects.

106. This duty arose under common law, state and federal regulations, and Janney's own policies, which promised to safeguard client data from unauthorized access or disclosure. By collecting, maintaining, and sharing Plaintiff's Private Information as part of its healthcare operations, Janney assumed a legal and ethical obligation to protect such sensitive data.

107. Janney's duty also included the obligation to: (a) implement reasonable security practices and safeguards consistent with industry standards; (b) conduct adequate due diligence before entrusting third parties, such as Alation, with Private Information; and (c) supervise and ensure that third parties adhered to the same rigorous standards for safeguarding Private Information.

108. Alation voluntarily undertook a duty to protect Plaintiff's and Class Members' Private Information when it accepted access to and custody of this sensitive data from Janney. By doing so, Alation assumed a responsibility to maintain reasonable security measures to prevent unauthorized access, theft, or misuse of the information.

109. This duty arose from Alation's business operations, its acceptance of the sensitive records, and applicable legal and ethical obligations, including the understanding that it was responsible for safeguarding the entrusted Private Information consistent with industry standards and best practices.

110. Defendants breached their duties under the FTC Act and other relevant standards, demonstrating negligence by failing to implement reasonable measures to protect Class Members' Private Information. Specific negligent actions and oversights by the Defendants include, but are not limited to:

111. Janney breached its duty to protect Plaintiff's and Class Members' Private Information by:

a. Failing to adequately vet Alation's data security protocols and capabilities before entrusting it with Private Information.

b. Failing to supervise Alation's handling of sensitive Private Information, despite knowing or having reason to know of the risks associated with sharing client data with third parties.

c. Failing to ensure Alation maintained industry-standard security systems, protocols, and practices to protect the Private Information in its possession before sharing it with Alation.

d. Transferring sensitive Private Information without sufficient oversight mechanisms to ensure its protection.

e. Neglecting to remove Private Information of former clients that was no longer required to be retained according to regulations.

112. Likewise, Alation breached its duty to protect Plaintiff's and Class Members' Private Information by:

a. Neglecting to adopt, implement, and maintain sufficient security measures to safeguard Class Members' Private Information.

b. Inadequately monitoring the security of its networks and systems.

c. Allowing unauthorized access to Class Members' Private Information.

d. Failing to promptly detect that Class Members' Private Information had been compromised.

e. Failing to promptly and adequately inform Class Members about the occurrence and extent of the Data Breach, preventing them from taking appropriate measures to mitigate the risk of identity theft and other damages.

113. Defendants' duty extended to protecting Plaintiff and Class Members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship.

114. Defendants knew or should have known that Private Information, particularly within the healthcare and legal services contexts, is a prime target for cybercriminals. The sensitive nature of this data and its value on the black market made Plaintiff and Class Members part of a foreseeable, high-risk group that would suffer harm if their Private Information was not adequately protected.

115. But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

116. There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding

such Private Information by adopting, implementing, and maintaining appropriate security measures.

117. As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) the unconsented disclosure of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

118. Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

119. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

## COUNT II

### Negligence *Per Se*

### (On Behalf of Plaintiff and Class Members against Defendants)

120. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

121. According to the Federal Trade Commission Act, 15 U.S.C. § 45,

Defendants were obligated to furnish fair and adequate computer systems and data security practices to protect the private information of both the Plaintiff and Class Members.

122. Defendants breached their duties to Plaintiff and Class Members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

123. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se.*

124. Plaintiff and Class Members are within the class of persons the statutes were intended to protect and the harm to Plaintiff and Class Members resulting from the Data Breach was the type of harm against which the statutes were intended to prevent.

125. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

126. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that by failing to meet their duties, Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

127. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to nominal, compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT III

### Breach of Implied Contract

### (On Behalf of Plaintiff and the Class against Janney)

128. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

129. Plaintiff and Class Members were required to deliver their Private Information to Janney as part of the process of obtaining services at Janney. Plaintiff and

Class Members paid money, or money was paid on their behalf, to Janney in exchange for services.

130. Janney solicited, offered, and invited Class Members to provide their private information as part of its regular business practices. The Plaintiff and Class Members accepted Janney's request and provided their private information to Defendants.

131. Janney solicited, offered, and invited Class Members to provide their private information as part of its regular business practices. The Plaintiff and Class Members accepted Janney's request and provided their Private Information to Janney solicited, offered, and invited Class Members to provide their private information as part of its regular business practices.

132. Plaintiff and Class Members entrusted their Private Information to Janney. In so doing, Plaintiff and Class Members entered into implied contracts with Janney by which Janney agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

133. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Janney's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

134. Implicit in the agreement between Plaintiff and Class Members and Defendants to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such

information secure and confidential.

135. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Janney, on the other, is demonstrated by their conduct and course of dealing.

136. On information and belief, at all relevant times Janney promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

137. On information and belief, Janney further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

138. Plaintiff and Class Members paid money to Janney with the reasonable belief and expectation that Janney would use part of its earnings to obtain adequate data security. Janney failed to do so.

139. Plaintiff and Class Members would not have entrusted their Private Information to Janney in the absence of the implied contract between them and Janney to keep their information reasonably secure.

140. Plaintiff and Class Members would not have entrusted their Private Information to Janney in the absence of their implied promise to monitor their computer systems and networks to ensure they adopted reasonable data security measures.

141. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Janney.

142. Janney breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and Class Members once the relationship ended, and by failing to provide accurate notice to them that personal information was compromised as a result of the Data Breach.

143. Janney breached the implied covenant of good faith and fair dealing by

failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Janney knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

144. As a direct and proximate result of Janney's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) unconsented disclosure of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Janney's possession and is subject to further unauthorized disclosures so long as Janney fails to undertake appropriate and adequate measures to protect the Private Information.

145. As a direct and proximate result of Janney's breach of the impliedy contracts, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## COUNT IV

### In the Alternative—Unjust Enrichment

### (On Behalf of Plaintiff and the Class against Janney)

146. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

147. Plaintiff bring this count as an alternative to the breach of implied contract claim (Count III) above.

148. Plaintiff and Class Members conferred a monetary benefit on Janney. Specifically, they paid Janney and/or its agents for the provision of services and in so doing also provided Janney with their Private Information. In exchange, Plaintiff and Class Members should have received from Janney the services that were the subject of the transaction and should have had their Private Information protected with adequate data security.

149. Janney knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Janney profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

150. Janney failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

151. Janney acquired the Private Information through inequitable record retention, having failed to investigate and/or disclose the inadequate data security practices previously mentioned.

152. If Plaintiff and Class Members had known that Janney would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have entrusted their Private Information at Janney or obtained services at Janney.

153. Janney enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Janney instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Janney's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

154. Under the circumstances, it would be unjust for Janney to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

155. As a direct and proximate result of Janney's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) unconsented disclosure of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Janney's possession and is subject to further unauthorized disclosures so long as Janney fails to undertake appropriate and adequate measures to protect the Private Information.

156. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Janney and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Janney from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

157. Plaintiff and Class Members may not have an adequate remedy at law against Janney, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT V

### Declaratory Judgment

### (On Behalf of Plaintiff and the Class against Defendants)

158. Plaintiff re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

159. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the Court

is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal statutes described in this Consolidated Complaint.

160. An actual controversy has arisen in the wake of the Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard Private Information and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further cyberattacks and data breaches that could compromise their Private Information.

161. Defendants still possess Private Information pertaining to Plaintiff and Class Members, which means their Private Information remains at risk of further breaches due to Defendants' inadequate data security measures. Plaintiff and Class Members continue to suffer injuries resulting from the compromise of their Private Information and remain at imminent risk that additional breaches will occur in the future.

162. Pursuant to the Declaratory Judgment Act, Plaintiff seek a declaration that: (a) Defendants' existing data security measures fail to comply with their obligations and duties of care; and (b) In order to comply with their obligations and duties of care, Defendants must:

a. Implement policies and procedures to ensure that any parties with whom they share sensitive Private Information maintain reasonable, industry-standard security measures, including, but not limited to, those listed below;

b. Purge, delete, or securely destroy Plaintiff's and Class Members' Private Information if it is no longer necessary for essential business functions, so it is not subject to further theft; and

c. Implement and maintain reasonable, industry-standard security measures, including but not limited to the following: (i) Engaging third-party security auditors/penetration testers and internal security personnel to conduct

regular testing, including simulated attacks, penetration tests, and audits on Defendants' systems, and promptly addressing any problems or vulnerabilities detected; (ii) Utilizing automated security monitoring through third-party security auditors and internal personnel; (iii) Auditing, testing, and training security personnel on new or updated procedures; (iv) Encrypting Private Information and segmenting it with firewalls and access controls to prevent hackers from accessing multiple areas of Defendants' systems in the event of a breach; (v) Purging, deleting, and securely destroying Private Information that is no longer necessary for essential business operations; (vi) Conducting regular database scanning and security checks; (vii) Providing ongoing employee education on best security practices; (viii) Implementing multi-factor authentication and the Principle of Least Privilege (POLP) to combat system-wide cyberattacks; and (ix) Routinely conducting internal training to educate security personnel on breach identification, containment, and response protocols.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of themselves and Class Members, request judgment against Defendants and that the Court grants the following:

A. For an Order certifying the Class, and appointing Plaintiff and their Counsel to represent the Class;

B. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members.

D. For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be

determined;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other relief the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 3, 2026

Respectfully submitted,

By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso (SBN: 338762)
**KOPELOWITZ OSTROW P.A.**
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-332-4200
cardoso@kolawyers.com

John Nelson, Esq. (S.B. #317598)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse Suite
Beverly Hills, CA 90212
Telephone: (858) 209-6941
JNelson@milberg.com

*Attorneys for Plaintiff and the Putative Class*